Your Honor, thank you. May it please the Court, my name is David Wilson and I'm appearing today on behalf of my client, Petitioner Christine Chernosky. The reason we're here before you today is that the respondent, excuse me, the petitioner, I'm used to saying respondent in immigration context, the petitioner in this matter has been trying to apply for residency in the United States. She's been applying, trying to apply for almost 10 years. At the same time, the government of the United States has been trying to remove her from the same issue that we're focused on today, which is that she participated in the 2004 election here in Minnesota. Petitioner maintains that she has presented a viable defense to her voting in 2004, that she has proven, both in rebuttal to the removal charge as much as in establishing her admissibility, the defense of entrapment by estoppel. It is uncontested, based on her credible testimony, as the agency found her credible, that she received a postal verification card in the mail, unsolicited by her, that when she applied for her license, she somehow got into the state system, the state of Minnesota system, based on a license application that does not represent that she represented herself as anything other than a Canadian with a pending immigration application. She received her license on August 24, 2004. The postal verification card arrived some time after that. The election was less than 90 days later. Petitioner appeared at the polling place as identified on the roster card, or the voter verification card, and followed the instructions given to her. The government's case rests entirely on the existence of a polling roster page. Their argument seems to be that, I'm trying to extrapolate from it because it's not entirely clear to me, even after all this time, that the mere existence of this polling roster page, with a four-line certification at the top in small font, in itself meant that she represented herself to be eligible to vote as a citizen at the time that she was voting. Was there anything between the time she received this in the mail from Minnesota and the time she went to vote, that she took any action in what you're describing as the 90 days? No. And her position has been all along that she believed that the state of Minnesota knew what it was doing when sending her the card, and she had no reason to question their judgment. And so the question becomes, it goes to the very issue, was her reliance reasonable? The card is specific to her. It's mailed to her home. It gives her a unique identification number. So it is very precise in its nature. The one thing that's missing from this card, which is ironic that it's not on the card but it's on the polling roster page, is any warnings about capacity, about verifying, again, that you're only eligible to vote if you meet certain conditions. And so if you look at the license application itself, it actually has a verification box. It asks basically two basic questions. Are you a citizen? Yes. And if you check, then you proceed to the next question. Do you wish to register to vote based on all these other conditions? If the roster page itself had a similar yes or no dynamic, then I think my argument would be futile. Because at that point, she would have been alerted to be actually inquiring of herself, should I even be here in the morning of this election? So the government's argument seems to be a per se, the mere existence of this form proves that she knew what she was doing. It's more than the mere existence of the form, though, isn't it? Isn't it that there was a factual finding that she signed it with the knowledge of the information on it confirming that she was a U.S. citizen? So isn't that a factual finding we have to grapple with? Well, there's tension in that conclusion, Your Honor, and there's tension in that the petitioner in no way actually ever concedes that she signed it. She frankly doesn't recall if she did or not. She never testified, for example, or offered an affidavit acknowledging that she signed it. The government itself did not present the actual polling roster page by the time that anyone actually raised this issue. The state of Minnesota had long destroyed it. And so the government's argument is premised on the operation of government itself, saying that the state of Minnesota, in following its own procedures, would more likely than not have actually required her to sign this. But isn't there still a factual finding by the district court that she knew she was voting unlawfully? It's a finding based solely on the existence of the form, Your Honor, and the fact that if she had signed the form, then therefore the knowledge is imputed to her. The problem with that argument. Well, I thought it was more than that. I thought it was the proposition that a person's charged with knowledge of the law. Well, Your Honor, but that is the whole premise of the entrapment by estoppel defense, is when the hand of government sends a person in a certain direction, albeit in error, that at some point then that person's allowed to rely on that. Really the question before the court, in which I would proffer that the Board of Immigration Appeals fail to actually analyze, is to what extent does a subsequent communication or notice, in this case, have to have any measure of strength to resist the initial communication? In other words, an object put in motion is going to continue in motion down the course that it's headed unless something equal stops it. Well, there wasn't any communication from any agency that told her she could vote. Certainly there was, Your Honor. The Secretary of State itself, that office, sent the postal verification card to her residence. It told her when and where to go appear to vote. Did it tell her she could vote, she could vote legally? It did not specifically say you're authorized to vote. Well, that's my point. It seems to me there's a difference between a registration and the legal ability, legal authorization, to vote under federal law. That would be the case, Your Honor. I understand why you're asking the question. If there was a distinction between the state law and the federal law regarding the capacity vote, but in this case they're essentially mirrors of each other, 18 years old in citizenship, I think at that point it's Petitioner's position that the act of sending the card itself is communicating to Petitioner that she is authorized to vote. Because otherwise, why would the state have sent it in the first place? So she has no reason to question the judgment of the state at that point. It is the superior actor and aware of its own electoral process. And this is in conjunction at the same time she's establishing residency in the state of Minnesota. This is occurring contemporaneous with the fact that she's receiving a license relative to the same period. So her life has been transitioning to Minnesota in a relatively short period. She's not in a position, or I don't think it's reasonable to ask that someone's going to question the wisdom of a state actor who sends her information, and says, on this date, you're allowed to do this. Come to this place at a time. Your view is just the sending of that form is basically express permission from Minnesota. It seems to me that in the Estoppel cases it's more of an express permission that the state official or the government official has given to the person. She sort of had to make some inferences from that mailing. I understand that the body of law tends to gravitate towards an official confirming something when asked by an individual. Often this comes up, for example, in firearm cases and whether someone is authorized to possess a weapon or not. And there's an inquiry to a sheriff's department or something along those lines. And they get an express, the question's asked, they get an express answer of yes, you're permitted. Correct. We've got a different situation here. We've got the mailing of the form without an express authorization. I would say that the weight of the form in itself, because the fact that it was unsolicited, and it is a precise invitation, so if the individual receives an invitation to an event, whether it's an election in this case or something else, and they feel respected that they wish to participate, they're not going to necessarily call and question the legitimacy of the invitation. And so to the extent that the government has invited her to participate in this process, I'll be in error. It does not mean that her reliance on that invitation is weakened in any way. It doesn't call upon her to suddenly question the will or the judgment of the state actor who sent her this without provocation. In the cases that basically the parties have been quibbling over, the two cases out of the Seventh Circuit, that very dynamic is appearing in the case favorable to the petitioner. The registration card appeared. Now, there was an exchange at some point at the DMV regarding that, but in this case, there was no exchange. There was no communication soliciting or trying to establish voter eligibility. The state just told her, you're eligible by sending her the card, and not at the same time saying, by the way, make sure that you actually are. There is no warning on that since. The actual roster page in itself, as it relates as a warning that would cut off communication, is entirely ineffective. It is shared by ten other people and has at least four pieces of personal information relative to each individual. No person is reasonably going to stand over this form and read all the fine print during the middle of an election when someone else's name, date of birth, and their ID number is listed on there. It would be an invasion of privacy. It would be something unrealistic that any of us would ever feel comfortable doing. So then you're calling into question the whole process of confirmation of U.S. citizens at the polling. That seems a pretty tough argument. I think it sort of is a, why do it? Well, I do think it is just the statute requires them to require the certification, but there isn't an actual verification of citizenship at the time of the election. That person is presumed to have been already verified for the registration process. But they are X-ing a box, though, right? No. They're signing to say that they're authorized, right? No, they're signing. Well, there's a debate as to whether they're signing they're authorized or they're signing they're attendance. I would call this a glorified attendance sheet. It's no different than when we appear for our CLEs and we're verifying that we're there. I don't think any of us read the verification at the top. We just note that we're there. Your Honor, I see that I've actually used up my primary time, so I'd like to reserve the rest for rebuttal. Thank you. May it please the Court. My name is James Hurley, and I represent the Attorney General. This petition for review should be denied for three reasons. First, the removability in this case has been established when Ms. Chernozky admitted her overstay charge. And second, based on the first, it becomes her burden to show that she is not inadmissible in order to adjust her status. And Ms. Chernozky has not met that burden because she voted unlawfully in the November 2004 election. Third point is that her claim of entrapment by estoppel is unavailing because her reliance on the erroneous voting registration card was not reasonable. As to the first point, it's really important in this case, too, that removability has been established in this case. Originally, there were three charges of removability, and she conceded the first one. So in that instance, the burden is shifted from the government onto her. And she has to show by clear and beyond – clearly and beyond a doubt that she is inadmissible – or she is not inadmissible in order to adjust her status. And she did not establish that. As the immigration judge and the board found, she violated three voting statutes – Article 7, Section 1 of the Minnesota Constitution, 18 U.S. Code 611, and the Minnesota Statute Section 201.014. So she has not established that she is not inadmissible. And then her final claim, and what the petitioner in this case has argued, is that she – entrapment by estoppel is an affirmative defense that excuses her voting in that case. To establish that, she has to show that the government – that there was an affirmative misconduct by the government. And in this case, it shows that when the Department of Vehicle Services mailed her the registration card, that was a mistake that the agency made. But her reliance – Why shouldn't she be able to rely on something that comes directly from – it is a government official, so that box is checked – comes directly from them, and it's telling her that she can essentially register to vote and vote in the next election. Well, as the immigration judge in the board found, she arrived in the United States in January of 2004, and she was – I guess she had gotten married before, and she was applying for – to adjust her status based on her marriage. And in July of that year, she applied for a license. And she mentions this in her brief, too, that she says, I saw this section there that says, I affirm that I'm a citizen and send me this – I'm eligible to vote. And she said that I knew that I was a Canadian citizen, so I shouldn't fill that out. So she didn't fill it out. And then, by mistake, when they sent her the license, they sent her that registration card. So there's a conflict there. And as Judge Easterbrook found in the Fitzpatrick case in the Seventh Circuit, she had time between when she received that registration, and I guess it was July or August of 2004, and November 2004, to double-check to make sure that she was actually authorized to vote. Well, let's go to the analogy of the example that opposing counsel gave, which is you go and see if you're able to get a firearm. And you ask the question, and you get the answer. Are you obligated to go double-check that answer and find another governmental source to confirm the first answer that you got? Well, I would say that to dial it back first, she knew that she wasn't a citizen. So she's starting from a point knowing that she was not authorized to vote. And then the DMV sent her that registration card. But I think the analysis that Judge Easterbrook had in the Fitzpatrick case is more analogous to this voting situation where somebody received an erroneous registration card. And then in that case, I think they asked somebody at the DMV, and they were told, I think it was up to you or something like that. So they had some kind of secondary affirmance from the government. In this case, she did, and this completely went against her, what she did when she applied for her license. And then the crux of the matter is, though, it's the signing of the polling place register. And the original one isn't there because it was destroyed, but there's an example that's in the record. And it says explicitly across the top, it says I'm over 18 and I'm a U.S. citizen. And it actually tracks the language that appears in the driver's license application. And she says that she was in a rush, and just like everybody, she was in a hurry and it was crowded, but she wasn't like everybody. She was a Canadian citizen that was voting in an election in the United States, so she's not in the same position there. So she says that she doesn't remember whether or not she signed it. But, again, that goes to the burden of proof in this case. She's got to show that she is admissible, and she hasn't shown that. And the law requires that you have to sign this polling register before you vote. So she signed it, and she voted, and there's no debate whether or not she actually voted or not. So that kind of goes to the Kamani case, one of the three Seventh Circuit cases that shows that you're bound by your signature whether or not you read it or you understood it. And it's really important in this case as well, too, because Ms. Trenovsky is from Canada, and she's a native English speaker, so she should have been aware of what was going on there when she saw that explicit language on top. Without the actual form that she signed, help me understand the IJ's decision that, in fact, there was one there. Is that simply because it's almost inconceivable to think there wouldn't be? Or was there any other testimony about the likelihood that that sign-in would not have been present when she voted in 2004? Well, there wasn't any testimony, really, about what happened here, because I guess the removal proceeding started in 2007, and she admitted her removability of the first charge. And then, actually, proceedings were suspended while she attempted to get adjustment of status through the Citizen Immigration Services. And then she was involved in a motor vehicle accident, and she had traumatic brain injury. So she actually didn't testify to that. But, as the immigration judge found, too, that in 2004 it would be inconceivable that the polling place didn't follow the Minnesota statute section. Was that based on evidence that was presented on that likelihood? Yes. Well, actually, the reason after it was suspended, Citizenship and Immigration Services did an investigation, and that's contained in the record at page 289. And they did an investigation, and they found that they denied her adjustment application for the same reason, saying that she had not shown that she was not inadmissible by voting her law public. And it said that DHS, I guess, admitted the blank form, and they investigated it, and they found that the language was the same. And, you know, especially considering how important the elections are and, you know, considering the circumstances, the immigration judge reasonably found that it would be inconceivable that it was just completely disregarded in this case. Counsel, in the Fitzpatrick case, I thought it was interesting, the very end of the opinion, there's reference to an inquiry that that panel made of the Attorney General with respect to whether consideration had been given to exercising prosecutorial discretion. Specifically, that panel asked the question whether Fitzpatrick is the kind of person the Attorney General and the Department of Homeland Security want removed from the United States. So I would ask you the same question with respect to this case. I can speak to that. I wasn't the attorney who handled this case from the beginning, but I know that all the attorneys in our office during this time frame were instructed to check with the agency, with DHS, to see if they would be amenable to prosecutorial discretion in the case, and this case wasn't found to be one. So, and I think for the same reason that Judge Easter found in the Fitzpatrick case, that it was up to the agency whether or not they wanted to exercise PD. I can't speak to the specific reasons. Maybe it had something to do with the fact that her original adjustment application through her husband, there was a finding of fraud somewhere that might have had something to do with it, but I can't speak exactly to why it was denied in this case. But it was up to the agency. Counsel, what's your position on whether entrapment by estoppel even applies to immigration cases? It does. And if you look at the Keithley case, the Seventh Circuit case where the petitioner relies on extensively, in that case the Seventh Circuit sent it back down because the immigration judge and the board said that it didn't even apply in immigration cases and that it only applied in criminal cases. So we're not contesting that it doesn't apply in this case, but we're saying that based on the facts it was unreasonable for her to rely on this erroneous voter registration card. Wasn't there also a finding that she knowingly voted as a non-citizen? It's the same kind of analysis where the immigration judge actually found that she was removable for that and she knew where she should have known based on the warning that was on top of that voting place register. So if there are no further questions, the government asks that you deny the petition for review. Thank you very much. Counsel, have any time we might need? Thank you, Your Honor. I just have a few brief points. First, that is an incorrect statement saying there was any form of fraud finding. There was never a fraud finding at any point in this case. I think it's important that the specter of that be eliminated from this discussion immediately. Regarding your last question, Your Honor, there is actually an outstanding or unresolved charge of removability based on the possibility of a claim of citizenship. The immigration judge decided not to reach that charge or resolve it because she had resolved the other charge regarding unlawful voting, so she didn't see the need to proceed further. The government's first point, though, regarding why are we challenging the removability component of this issue when the charge of removal and the standard of admission are the same is important to respond to. If we hadn't challenged it, we would be opening ourselves up to the prospect of we're admitting that we can't even meet the threshold evidence, the preponderance of evidence, to defeat the charge of removal. So we certainly wouldn't be able to meet the higher burden of proving a disability. So there's a hole in their logic. If we don't challenge one, we're opening to losing on the other. The other issue that comes up that's often overlooked in these proceedings is that it's one thing to have a charge of removal based on an overstay. That does not foreclose someone from coming back to the United States in the future. There are prospects of returning to the United States and visiting the friends that you have made and the acquaintances you've made over the 18 years you've been living in the United States, or in this case, 16 years. This is final. There is no waiver. There is no forgiveness. Once she's gone, she's gone. So from her standpoint, it is worth fighting the issue whether she'd be removed on this basis in addition to overstay. Now, the government, you know, also points out, it brings up the Fitzpatrick case in the bound by your signature reference. The problem with that reference is that reference is actually specific to the license application. It was that that person was trying to make some argument, and I believe actually it was in the Kamani case, not the Fitzpatrick case, making a reference that that person didn't really understand what they were signing. We're not making that argument. We're making the argument that she wasn't even aware she was signing the certification because it is so small, put at the top of a page on a document that she can't control. She can't handle it. It's a state actor's government. It's a government document. At the time of the election, the electoral staff is going to manage that document. And as I pointed out earlier, it's going to contain the information of 10 different people. Someone's not going to actually have enough authority of the document to then have time to study it and make hay of it. That's quite different than the license application. Now, in the license application itself, the government says that it raises the possibility that she knew what she was checking or that she had testified regarding citizenship. Well, she knew she wasn't a citizen. But if you look at the license application itself, once you realize, wait, I'm not a citizen, I don't go there, there's nothing that actually establishes in the record, there's no testimony or admission that she even bothered to read any further because she knew that part of the application didn't apply to her. The first part is verify that you ever had a license anywhere, a provisional license. Are you encumbered in any way because of alcohol-related convictions or something that would prevent you from getting another license? Is the record clear she just voted once? Yes, yes. I don't think that has been contested. I know the Secretary of State's record referenced a possible re-registration in 2006, but I do believe that's reflective of her changing her address and really just updating of information between the Department of Motor Vehicle Services and the Secretary of State. There's often a going back and forth of these transactions in that way. So I thank Your Honor and this court for considering this argument. It's very important to the petitioner, and she's very thankful that you've given her an opportunity to be heard today. Thank you. Thank you, counsel. Your arguments have been very helpful. You may stand aside. The case is submitted.